UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

199 DELAWARE AVENUE, INC.,

               Plaintiff,

    v.

LAKE EFFECT ARTISAN ICE CREAM,
LAKE EFFECT ICE CREAM HERTEL, LLC,
LAKE EFFECT ICE CREAM, LLC, LAKE
EFFECT ICE CREAM WHOLESALE, LLC,
and LAKE EFFECT CANAL STREET, LLC,

               Defendants.

_____

**DECISION AND ORDER**

1:19-CV-00224 EAW

## **INTRODUCTION**

Plaintiff 199 Delaware Avenue, Inc. ("Plaintiff") moves for a preliminary injunction prohibiting Defendants Lake Effect Artisan Ice Cream, Lake Effect Ice Cream Hertel LLC, Lake Effect Ice Cream LLC, Lake Effect Ice Cream Wholesale LLC, and Lake Effect Canal Street LLC (collectively "Defendants") from "[a]dvertising, soliciting, marketing, selling, offering for sale or otherwise using the 'LAKE EFFECT DINER' word and design mark, and any confusingly similar variation thereof, including but not limited to 'LAKE EFFECT ICE CREAM' and 'LAKE EFFECT ARTISAN ICE CREAM' in connection with services for providing food and drink, namely, restaurant, coffee shop service, ice cream shop service, banquet-style serving of food and drinks, and catering and take-out restaurant services during the pendency of this action[.]" (Dkt. 7 at 2). For the reasons discussed below, Plaintiff's motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

S. Tucker Curtin ("Curtin") is the owner of Plaintiff. (Dkt. 7-2 at ¶ 1). Since December 24, 2002, Plaintiff has been the holder of a fictitious name certificate for the name "Lake Effect Diner." (Dkt. 7-2 at ¶ 2; Dkt. 7-15 at ¶ 8). The Lake Effect Diner is located on Main Street in Buffalo, New York, and serves 25 flavors of milkshakes, ice cream, and vegan ice cream, among other food items. (Dkt. 7-2 at ¶¶ 6, 11).

On December 19, 2006, Plaintiff registered the service mark for the words "LAKE EFFECT DINER," in combination with an associated design logo (the "Mark"), on the Principal Register of the United States Patent and Trademark Office (the "USPTO"). (*Id.* at ¶ 15 and Ex. C). On April 13, 2012, the USPTO acknowledged and accepted Plaintiff's statement of incontestability regarding the Mark. (Dkt. 7-6 at 2).

Erik Bernardi ("Bernardi") and Jason Wulf ("Wulf") are the co-owners of Lake Effect Artisan Ice Cream.[1] (Dkt. 17-14 at ¶ 5). Beginning in 2007, Bernardi and Wulf began making ice cream out of their homes. (*Id.* at ¶ 6). On March 4, 2008, Bernardi and Wulf registered Lake Effect Ice Cream LLC. (*Id.* at ¶ 9). Lake Effect Artisan Ice Cream was launched to the public on June 28, 2008, in Lockport, New York. (*Id.* at ¶ 12). Later that year, grocery stores in both Lockport and East Amherst, New York, began selling Lake Effect Artisan Ice Cream. (*Id.* at ¶ 14).

---

[1] Lake Effect Artisan Ice Cream is sometimes referred to as "Lake Effect Ice Cream" in the documents submitted by the parties. For consistency's sake, the Court refers to it as Lake Effect Artisan Ice Cream throughout this Decision and Order.

Bernardi states in a sworn declaration that in 2009, he and Wulf met Curtin at a music festival where both Lake Effect Artisan Ice Cream and the Lake Effect Diner were food vendors. (*Id.* at ¶ 16 and Ex. F).[2] Lake Effect Artisan Ice Cream and the Lake Effect Diner were two of only eight food vendors at the festival and served refreshments in close proximity to one another. (*Id.*).

In 2009 and 2010, additional grocery stores and restaurants, including in Buffalo, began selling or featuring Lake Effect Artisan Ice Cream. (*Id.* at ¶ 17). In 2011, Lake Effect Artisan Ice Cream won the Best of WNY Buffalo Spree Award for "Best Ice Cream," and the Lake Effect Diner won the Best of WNY Buffalo Spree Award for "Most Kid Friendly." (*Id.* at ¶ 19).

Bernardi and Wulf opened a Lake Effect Artisan Ice Cream "scoop shop" in Lockport, New York, in June 2011. (*Id.* at ¶ 20 and Ex. K). On December 12, 2012, Bernardi and Wulf formed Lake Effect Canal Street, LLC, and in 2013, they moved into a location on Canal Street in Lockport, which is used as both a scoop shop and a location to manufacture ice cream. (*Id.* at ¶ 21 and Ex. L).

In the summer of 2012, Bernardi and Wulf entered into an agreement with Ingeri Eaton, the owner of Eaton Chocolate, a chocolate and ice cream shop that was then located at 1856 Hertel Avenue in Buffalo. (*Id.* at ¶ 22). From the summer of 2012 until it closed in July 2014, Eaton Chocolate served Lake Effect Artisan Ice Cream and prominently advertised that fact, both at its retail location and on social media. (*Id.*).

---

[2]     At oral argument, Plaintiff's counsel acknowledged that Curtin was present at this event but stated that Curtin could not recall if he had met Bernardi and Wulf.

Bernardi states in his declaration that in approximately 2013 or 2014, Curtin approached Bernardi and Wulf with a business proposal for Lake Effect Artisan Ice Cream to rent space at Dug's Dive, a restaurant in downtown Buffalo owned by Curtin. (*Id.* at ¶ 24). Plaintiff has not rebutted this statement by Bernardi. The proposal ultimately was not accepted and Dug's Dive closed in 2015. (*Id.*).

In May 2017, Bernardi and Wulf opened a Lake Effect Artisan Ice Cream scoop shop at 1900 Hertel Avenue in Buffalo, approximately 500 feet from the former location of Eaton Chocolate. (*Id.* at ¶ 29).

On August 18, 2017, Plaintiff's counsel sent a cease-and-desist letter to Bernardi and Wulf. (Dkt. 7-17). The parties thereafter engaged in settlement negotiations through May 2018. (Dkt. 21-3 at ¶¶ 5-8). On May 1, 2018, Plaintiff's counsel sent a letter to Defendants' counsel conveying Plaintiff's final settlement offer and requiring a reply by no later than May 4, 2018. (Dkt. 21-4). No reply to this letter was received. (Dkt. 21-3 at ¶ 8).

In July 2018, Curtin hired private investigator Douglas Adams to "investigate the similarities of the signage of Plaintiff's LAKE EFFECT DINER, and Defendants' LAKE EFFECT ARTISAN ICE CREAM business." (Dkt. 7-8 at ¶¶ 1-3). Adams performed an investigation in "July, August, and September 2018," which included interviewing consumers and visiting and photographing the Lake Effect Artisan Ice Cream Hertel Avenue scoop shop. (*Id.* at ¶¶ 4-15).

On October 22, 2018, Defendants filed two applications with the USPTO—one for the word mark "LAKE EFFECT ARTISAN ICE CREAM" in standard characters and one

for the words "LAKE EFFECT ARTISAN ICE CREAM" and an associated design. (Dkt. 7-15 at ¶ 18 and Exs. E and F). On February 8, 2019, the USPTO issued non-final Office Actions refusing registration of Defendants' proposed trademarks based on a likelihood of confusion with Plaintiff's Mark. (Dkt. 7-22; Dkt. 7-23).[3]

On February 7, 2019, Plaintiff's counsel sent a letter and a copy of an unfiled complaint to Defendants' counsel and requested a response by no later than February 21, 2019. (Dkt. 21-2). Counsel for the parties had a telephone discussion regarding settlement on February 21, 2019, but were not able to resolve the matter. (Dkt. 21-1 at ¶ 5).

Plaintiff commenced the instant action on February 21, 2019. (Dkt. 1). Plaintiff filed the pending motion for a preliminary injunction on February 25, 2019. (Dkt. 7). Defendants filed opposition papers on March 20, 2019 (Dkt. 17), and answered the Complaint on March 29, 2019 (Dkt. 19). Plaintiff filed reply papers on April 2, 2019 (Dkt. 21), and, with the Court's permission, Defendants filed a sur-reply on April 10, 2019 (Dkt. 22; Dkt. 23). A motion hearing was held before the undersigned on April 17, 2019. (Dkt. 25).

---

[3]    "It is customary for an examining attorney at the PTO to issue a non-final office action setting forth the legal status of a trademark application. The grounds for refusal in a non-final office action, however, do not constitute a final rejection of the application, and the applicant will typically be provided with an opportunity to explain why its application should be accepted." *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 215 (E.D.N.Y. 2007).

## DISCUSSION

### I.    Legal Standard

In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the moving party is unable to demonstrate a likelihood of success on the merits, a court may still issue a preliminary injunction if the moving party demonstrates "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 113-14 (2d Cir. 2006) ("To obtain a preliminary injunction, plaintiff must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor.") (applying test to request for injunction prohibiting trademark infringement).

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, and "is one of the most drastic tools in the arsenal of judicial remedies," *Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (quotation omitted). "The district court has wide discretion in determining whether to grant

a preliminary injunction[.]" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60,

66 (2d Cir. 2007) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005)).

## II. Plaintiff has Failed to Demonstrate a Likelihood of Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the

issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559

F.3d 110, 118 (2d Cir. 2009) (quotation omitted). "Thus, if a party fails to show irreparable

harm, a court need not even address the remaining elements of the test." *Monowise Ltd.*

*Corp. v. Ozy Media, Inc.*, No. 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y.

May 3, 2018). In the particular context of trademark infringement claims, the Second

Circuit has explained:

> Preliminary injunctions are generally granted under the theory that there is
> an urgent need for speedy action to protect the plaintiffs' rights. Delay in
> seeking enforcement of those rights, however, tends to indicate at least a
> reduced need for such drastic, speedy action. Significant delay in applying
> for injunctive relief in a trademark case tends to neutralize any presumption
> that infringement alone will cause irreparable harm pending trial, and such
> delay alone may justify denial of a preliminary injunction for trademark
> infringement.

*Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (citations omitted); *see also*

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("A plaintiff

who establishes that an infringer's use of its trademark creates a likelihood of consumer

confusion generally is entitled to a presumption of irreparable injury.[4] This presumption

---

[4]    In *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010), the Second Circuit explained
that, in light of the Supreme Court's decision in *eBay Inc. v. MercExchange*, L.L.C., 547
U.S. 388 (2006), "courts must not simply presume irreparable harm." *Salinger*, 607 F.3d
at 82. Thus, it is no longer the case that a showing of likelihood of confusion is sufficient
to find irreparable injury in a trademark infringement case. This change in the law did not

may be defeated, however, when a party has delayed in seeking injunctive relief."). "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Monowise*, 2018 WL 2089342, at *2 (denying motion for preliminary injunction in trademark infringement case where there was "more than five months of unjustified delay").

Here, the Court finds that Plaintiff's lengthy and unjustified delay in seeking injunctive relief warrants denial of Plaintiff's motion. In opposition to Plaintiff's motion, Defendants have demonstrated that: (1) Curtin has been aware of Bernardi and Wulf's use of the Lake Effect Artisan Ice Cream name since at least 2009; (2) in 2009 and 2010, Lake Effect Artisan Ice Cream was offered in retail and restaurant locations in Buffalo and other areas within the western New York region; (3) in 2011, a Lake Effect Artisan Ice Cream scoop shop opened in Lockport, New York; (4) beginning in the summer of 2012 and continuing through July 2014, Eaton Chocolate, which was then located at 1856 Hertel Avenue in Buffalo (approximately 500 feet from Defendants' current location on Hertel Avenue), began selling Lake Effect Artisan Ice Cream in its ice cream shop and prominently advertised that fact; and (5) in approximately 2013 or 2014, Curtin contacted Bernardi and Wulf with a proposal for Lake Effect Artisan Ice Cream to rent space at Dug's Dive, a restaurant in downtown Buffalo owned by Curtin, and to sell Lake Effect Artisan

---

affect the well-established proposition that undue delay constitutes "strong evidence that immediate injunctive relief is not required to prevent irreparable harm." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 457 (S.D.N.Y. 2014) (quotation omitted).

Ice Cream. (*See* Dkt. 17-14 at ¶¶ 16-17, 20-25). Nothing in Plaintiff's submissions contradicts any of these factual showings. The Court agrees with Defendants that, under these circumstances, Plaintiff's decision to wait until February 2019 to seek injunctive relief strongly undercuts any suggestion of irreparable harm and justifies a denial of Plaintiff's motion.

In its reply papers, Plaintiff conflates the standard for undue delay in seeking preliminary injunctive relief with the standard for laches and contends that it has not been satisfied in this case. In particular, Plaintiff argues that any delay in commencing suit (and seeking injunctive relief) was justified because it did not have a "provable" claim of trademark infringement that "loomed large" until May 2017, when Defendants opened their ice cream shop on Hertel Avenue. (Dkt. 21 at 15-21). Plaintiff alleges that it "took action" within three months of this date, by sending a cease-and-desist letter in August 2017. (*Id.* at 21).

Plaintiff's argument fails from both a legal and a factual standpoint. As a legal matter, there is no basis for conflating the length of delay required to establish the equitable defense of laches with the length of delay required to justify denial of a motion for injunctive relief. As the Second Circuit has explained, while "delay [in commencing suit] may not warrant the denial of ultimate relief, it may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (quotations and alteration omitted); *see also Tom Doherty Assocs., Inc.*

*v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (noting that "[d]elay is typically relevant to both irreparable harm and laches," but ultimately the equitable defense of laches "relates only to permanent relief"). In other words, a delay need not be significant enough to justify outright denial of a trademark holder's claims in order to demonstrate that irreparable harm is unlikely to occur. *See* 6 McCarthy on Trademarks and Unfair Competition § 31:31 (5th ed.) ("Plaintiff's delay that would not be sufficient to be a defense to an ultimate, permanent injunction, may well suffice to support a trial judge's conclusion that, after all, there is not a very pressing need for immediate extraordinary relief and that the plaintiff, having itself delayed, can well afford to wait until a full-scale trial can be held.").

Plaintiff's argument also fails as a matter of fact. Plaintiff argues that it was the geographic proximity of Plaintiff's Hertel Avenue scoop shop to the Lake Effect Diner that finally caused its claim to "loom large" in May 2017. However, between 2012 and 2014, Lake Effect Artisan Ice Cream was being served and advertised approximately 500 feet from the current location, at Eaton Chocolate.[5] Moreover, in 2013 or 2014, Curtin offered Bernardi and Wulf the opportunity to sell Lake Effect Artisan Ice Cream from within one of Curtin's own restaurants in downtown Buffalo. Also, Lake Effect Artisan Ice Cream

---

[5] At oral argument, Plaintiff's counsel suggested that the sales at Eaton Chocolate were irrelevant to the delay analysis because the shop was not called Lake Effect Artisan Ice Cream and because Plaintiff was not aware of the sales. As the Court noted above, Defendants have shown that Eaton Chocolate prominently advertised its relationship with Lake Effect Artisan Ice Cream. Given the proximity of the former Eaton Chocolate location to the Lake Effect Diner, the Court finds counsel's argument, which was not contained in Plaintiff's submissions, implausible.

was being sold at other retail and restaurant locations within Buffalo as early as 2013. Under these circumstances, Plaintiff's contention that it was justified in failing to take earlier action because Defendants' original location was in Lockport, New York, lacks merit.[6]

Moreover, even accepting Plaintiff's argument that it did not have a provable claim that "loomed large" until May 2017, Plaintiff has offered no plausible explanation whatsoever for the three-month delay between the accrual of that claim and its cease-and-desist letter in August 2017. "The Second Circuit has found delays of 'as little as ten weeks' sufficient to defeat the presumption of irreparable harm." *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (quoting *Weight Watchers*, 423 F.3d at 145)); *see also Monowise*, 2018 WL 2089342, at *2 ("[C]ourts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.") (quotation omitted). Accordingly, this unexplained three-month delay following the opening of the Hertel Avenue scoop shop would alone be sufficient to justify denial of the instant motion.

---

[6] The Court is not persuaded in any event of Plaintiff's contention that the distance between Lockport and downtown Buffalo is sufficient to render the restaurant markets distinct. It is an approximate 40-minute drive from Lockport to downtown Buffalo, and Plaintiff has offered nothing beyond its own speculation that this distance makes it unlikely that customers would travel between the two locations to dine at the Lake Effect Diner.

The Court further notes that Plaintiff's contention that it is only the existence of the Hertel Avenue scoop shop that compelled it to seek injunctive relief is belied by the broad scope of the relief sought. In other words, Plaintiff does not seek to enjoin Defendants only from using the Lake Effect Artisan Ice Cream name and logo at the Hertel Avenue scoop shop but seeks relief that would also prohibit Defendants from doing so at their location in Lockport.

Plaintiff also has failed to proffer a plausible explanation for the delay between May 2018, when it concedes settlement negotiations between the parties broke down, and the attempt to resume settlement negotiations and subsequent commencement of this action in February 2019. "[D]iligent pursuit of settlement negotiations can justify delay . . . but . . . extensive delay after negotiations break down" still contravenes a contention that irreparable harm is likely to occur. *Marks Org.*, 784 F. Supp. 2d at 333. Plaintiff waited nearly ten months after the breakdown of settlement discussions to seek injunctive relief. The sole explanation for this delay proffered by Plaintiff is that it was involved in "evidence collection." (*See* Dkt. 21 at 20). The Court finds this unelaborated upon explanation wholly inconsistent with Plaintiff's acknowledgement that it believed it had a "provable" claim of trademark infringement in May 2017 and with the documents submitted by Plaintiff.

At oral argument, Plaintiff's counsel contended that the delay from May 2018 to February 2019 was the result of the difficulty in gathering evidence of customer confusion. However, the affidavit submitted by Plaintiff's private investigator indicates that his investigation took place in "July, August, and September 2018." (Dkt. 7-8 at ¶ 4, ¶¶ 6-13). Even giving Plaintiff the benefit of the doubt, and considering the latest customer affidavit submitted by Plaintiff dated November 19, 2018, approximately three months elapsed after the signing of that affidavit and the filing of the instant motion. (*See* Dkt. 7-10). There is nothing in the record before the Court that plausibly explains the delay between November 2018, when the investigation was apparently complete, and February 2019, when the motion for a preliminary injunction was made.

Accordingly, the best-case scenario for Plaintiff is that it waited until well after settlement negotiations broke down to even begin investigating its claim and that it then waited at least three months after those investigations were completed to seek injunctive relief. This delay, particularly when coupled with the three-month delay between the opening of the Hertel Avenue scoop shop and Plaintiff's cease-and-desist letter, as well as the background of the parties' interactions before that scoop shop opened, renders the issuance of a preliminary injunction unwarranted. *See, e.g., Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F. Supp. 2d 432, 438 (S.D.N.Y. 2003) (denying motion for preliminary injunction where evidence submitted by the plaintiff regarding settlement discussions nonetheless left "unaccounted for a period of approximately four months").

In sum, the Court finds, based on the record before it, that this is a case where there is a "fair inference . . . that the owner of the mark . . . had concluded that there was no infringement but later brought an action because of the strength of the commercial competition." *Tom Doherty Assoc.*, 60 F.3d at 39. In particular, the facts that Curtin had previously made a proposal that would have allowed Bernardi and Wulf to sell Lake Effect Artisan Ice Cream from one of his restaurants in downtown Buffalo and that Plaintiff raised no objection to Lake Effect Artisan Ice Cream being sold at Eaton Chocolate or to the opening of the Lockport scoop shop, strongly suggest that Plaintiff did not view its rights as being infringed by Defendants, but changed its mind based solely on the success that Defendants have enjoyed in the marketplace.

As previously noted, "if a party fails to show irreparable harm, a court need not even address the remaining elements of the [preliminary injunction] test." *Monowise*, 2018 WL 2089342, at *1. Here, Plaintiff's contentions of irreparable harm are completely inconsistent with its own actions. Under these circumstances, the Court declines to issue a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction (Dkt. 7) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: April 18, 2019
   Rochester, New York